UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
ADAM D. WHITE,                                                    **COMPLAINT**

                                              Plaintiff,          **23-cv-6924**
                      -against-

SHOLEM KLEIN, THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT ("NYPD") SERGEANT
LEIGHTON BARRETT, NYPD SERGEANT KURT KLENKE,
NYPD OFFICER AHMED ALI, NYPD OFFICER PALAKPREET
KAUR, NYPD OFFICER ADAM PHILLIPS, NYPD OFFICER
CARLOS REBOLLEDOCORTES, and NYPD OFFICER IKRAM
ULLAH,

                                              Defendants.
--------------------------------------------------------------------------------X

        Plaintiff ADAM D. WHITE, by his attorneys, Gideon Orion Oliver, and Cohen&Green

PLLC, hereby complains of the Defendants as follows:

                              **PRELIMINARY STATEMENT**

        1.      As seen below, Plaintiff ADAM D. WHITE is the principal at a law firm that

specializes in representing injured cyclists and other crash victims, who also has a history of

documenting and lodging complaints with Defendant City of New York about vehicles with

illegally obscured or otherwise modified "ghost plates" – including such vehicles owned or

operated by NYPD members or other law enforcement agents – often without a meaningful

response from the NYPD.

        2.      As part of those efforts, on August 5, 2022, Mr. White took pictures of the

illegally obscured license plate on a Sports Utility Vehicle (the "SUV") owned and operated by

Defendant SHOLEM KLEIN, a founding member of volunteering with a NYPD-adjacent

"Shomrim" volunteer civilian safety patrol called the Rockaway Nassau Safety Patrol, with

tinted windows and a removable emergency light prominently displayed on its dashboard.

3.      On the morning of August 5, 2022, the plate on Defendant Klein's SUV had a piece of plastic wedged into the plastic frame of Defendant Klein's license plate cover, obscuring one letter on Defendant Klein's license plate:



4.      On the morning of November 11, 2022, Mr. White again came upon, and documented, the same illegally obscured license plate on Defendant Klein's SUV, which was obscured in exactly the same way:



5.      Then, in order to document and make a complaint about Defendant Klein's illegally obscured license plate – without breaking or causing any damage to the license plate, plate cover, or any other property – Mr. White removed the black piece of plastic that had been

wedged into the license plate cover so that the entire license plate was exposed and visible. To Mr. White's surprise, Defendant Klein then emerged from the SUV, grabbing the piece of plastic from Mr. White and yelling that he would call the police and that Mr. White should wait. Minutes after Defendant Klein called 911 and falsely reported that Mr. White was "breaking his license plate cover," a number of officers from the NYPD's 78th Precinct – including several of the Defendants named in this lawsuit – arrived.

6.      In retaliation for Mr. White's speech, Defendant Klein then provided police with false information about Mr. White's alleged conduct, lying and accusing him of breaking the piece of plastic off the SUV, using tools that were in Mr. White's bag to do so, and also falsely claiming in substance that Mr. White had also done the same thing two weeks prior. At the same time, on top of the emergency light prominently displayed on his SUV's dashboard, Defendant Klein made extra sure police knew he was law enforcement adjacent, including by greeting the supervisor arriving at the scene as "boss" – as law enforcement often do – and by explicitly telling police he was "Shomrim" as well as that he volunteered for the NYPD and worked with NYPD members.

7.      While Defendant Klein provided police with obviously false information, Mr. White both explained verbally and provided them with objectively verifiable proof that he had not damaged Defendant Klein's license plate, license plate cover, or any other property, but that, rather, he had merely removed, not broken off, including, but not limited to, in the form of time-stamped before and after pictures on his phone, showing the black piece of plastic when Mr. White first observed it, already wedged into the plate in a manner commonly used by people seeking to evade tolls and laws requiring legitimate, legible license plates, as well as the plate after Mr. White removed the obscuring plastic, without any damage.

8.      At that point, though the police knew, or should have known, there was not probable cause to arrest or prosecute Mr. White, several of the responding officers, including the responding supervisor, arrested Mr. White for allegedly having committed "crim mis" or "Criminal Mischief" by, they claimed, breaking the piece of plastic off of the license plate cover and thereby intentionally damaging Defendant Klein's property – which police actually knew he had not done, and which Mr. White had shown them proof that he had not done.

9.      Nevertheless, as a result of Defendant Klein's false statements to the NYPD, and the responding NYPD members' retaliatory decision to arrest Mr. White – and not Defendant Klein, whom police recognized as law enforcement-adjacent – police held Mr. White for around five hours before finally releasing him. When they did so, they served Mr. White with legal process requiring him to answer charges in New York City Criminal Court that he had committed "Criminal Mischief in the Fourth Degree" - a Class A Misdemeanor.

10.      In furtherance of that false, malicious, and retaliatory prosecution, Defendant Klein made a number of false statements to the Office of the District Attorney of Kings County (the "KCDA's Office"). For example, Defendant Klein falsely told a KCDA Assistant District Attorney not only that Mr. White had intentionally broken a piece of plastic off of Defendant Klein's plastic license plate border on November 11, 2022, but also that Mr. White had done so "several weeks" before that – referring to August 5, 2022, when Mr. White took the first photograph of Defendant Klein's illegally obscured license plate. As to August 5, 2022, Defendant Klein invented from whole cloth that he had personally seen Mr. White break the plastic border of his plate cover with a plier and scratch his bumper, and then flee the location, among other things that simply did not happen.

11.    Although the KCDA's Office ultimately declined to prosecute any charges against Mr. White, citing "insufficient evidence to prosecute due to being unable to prove that [Mr. White] intended to damage [Defendant Klein's] license plate," the KCDA's Office has not taken any steps to prosecute Defendant Klein. Nor, to Mr. White's knowledge, has any NYPD or other Defendant City official taken steps to investigate, supervise, or discipline the NYPD members involved in arresting and prosecuting Mr. White.

12.    That misconduct exists against the backdrop and as the result of Defendant City's deliberate indifference to the constitutional and statutory rights of Mr. White and people like him who seek to report illegal "ghost plates," "ghost cars," and other traffic misconduct to Defendant City, without arrest, prosecution, and other forms of retaliation, which is demonstrated, among other ways, by Defendant City's history of ignoring or otherwise failing to respond appropriately to complaints about illegally parked law enforcement vehicles, including those with "ghost plates," as well as its history of allowing harassment and/or retaliation against people who lodge such complaints, without properly investigating, supervising, and/or disciplining NYPD members who engage in such misconduct, and Defendant City's failures to supervise, investigate, and/or discipline the NYPD members involved in arresting and prosecuting Mr. White in this case.

13.    In lieu of the KCDA's Office and/or Defendant City of New York holding Defendant Klein and the NYPD members involved in arresting and prosecuting Mr. White to account, as Mr. White had hoped they would, Mr. White now brings this suit seeking redress for the violations of his own rights, as well as seeking changes to Defendant City's policies and practices around responding appropriately, and without retaliation, to civilian complaints about illegal "ghost cars," "ghost plates," and other traffic misconduct.

**PARTIES**

14.     At all relevant times mentioned herein, Plaintiff ADAM D. WHITE (Mr.; he/him) has been a resident of Kings County in the City and State of New York. Plaintiff is a principal at Vaccaro & White (https://www.vaccaroandwhite.com/), a law firm that specializes in representing injured cyclists and other crash victims. As such, he has represented injured cyclists, pedestrians, and other crash victims for more than 20 years, and worked with victims' families, other safe street advocates, and legislators to enact and enforce laws to hold negligent and reckless driver's accountable and to end traffic violence.

15.     At all relevant times mentioned herein, upon information and belief, Defendant SHOLEM KLEIN has been a resident of Nassau County in the City and State of New York.

16.     At all relevant times mentioned herein, Defendant CITY OF NEW YORK (the "City") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

17.     At all relevant times hereinafter mentioned, upon information and belief, Defendant NYPD SERGEANT LEIGHTON BARRETT was assigned to the NYPD's 78th Precinct.

18.     At all relevant times hereinafter mentioned, upon information and belief, Defendant NYPD SERGEANT KURT KLENKE was assigned to the NYPD's 78th Precinct.

19.     At all relevant times hereinafter mentioned, upon information and belief, Defendant NYPD OFFICER AHMED ALI was assigned to the NYPD's 78th Precinct and/or Patrol Boro Bronx South Specialized Units.

20.     At all relevant times hereinafter mentioned, upon information and belief, Defendant NYPD OFFICER PALAKPREET KAUR was assigned to the NYPD's 78th Precinct.

21.     At all relevant times hereinafter mentioned, upon information and belief, Defendant NYPD OFFICER ADAM PHILLIPS was assigned to the NYPD's 78th Precinct.

22.     At all relevant times hereinafter mentioned, upon information and belief, Defendant NYPD OFFICER CARLOS REBOLLEDOCORTES was assigned to the NYPD's 78th Precinct.

23.     At all relevant times hereinafter mentioned, upon information and belief, Defendant NYPD OFFICER IKRAM ULLAH was assigned to the NYPD's 78th Precinct.

24.     At all relevant times hereinafter mentioned, Defendant City employed Defendants Barrett, Klenke, Ali, Kaur, Phillips, Rebolledocortes, and Ullah (collectively, the "Individual NYPD Defendants") within the NYPD.

25.     At all times hereinafter mentioned, the Individual NYPD Defendants, either personally or through their employees or subordinates, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, policies, and/or practices of the State or City of New York.

26.     At all relevant times, the Individual NYPD Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

27.     Each and all of the acts and omissions of the Individual NYPD Defendants alleged herein occurred while they were acting within the scope of their employment by the Defendant City.

28.     The Individual NYPD Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

29.     At all times relevant herein, as set forth more fully below, the Individual NYPD Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

30.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Individual NYPD Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

31.     The Individual NYPD Defendants are sued herein in their individual capacities.

## JURISDICTION

32.     Plaintiff brings this action pursuant to 42 USC §§ 1983, 1985, 1986, and 1988, the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and New York law.

33.     This Court has jurisdiction over those claims pursuant to 28 USC §§ 1331, 1343 and 1367.

8

## VENUE

34.     Venue is proper pursuant to 28 USC § 1391, *et seq.,* in the Eastern District of New York, where Defendant City of New York resides, a number of the Individual NYPD Defendants reside, and where the majority of the actions complained of herein occurred.

## GENERAL MUNICIPAL LAW COMPLIANCE

35.     Plaintiff timely served a Notice of Claim on the Office of the Comptroller of the City of New York related to the November 11, 2022 incident described below on February 9, 2023.

36.     Plaintiff provided testimony about the incident at a hearing pursuant to New York General Municipal Law Section 50-h on May 25, 2023.

37.     At least thirty days have elapsed since May 25, 2023 and the City has either neglected or refused adjustment thereof.

38.     This action has been initiated within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York law.

## STATEMENT OF FACTS

### Background on "ghost cars" in New York City

39.     New York State law requires that motor vehicle operators display valid license plates, both front and back, issued by the Department of Motor Vehicle ("DMV") while driving.

40.     § 402(a) of New York's Vehicle and Traffic Law ("VTL") requires that, among other things, each motor vehicle operated on a public highway must "have a distinctive number assigned to it by the" DMV as well as "number plates issued by the commissioner with a number and other identification matter if any, corresponding to that of the certificate of registration conspicuously displayed…."

41.     VTL § 402(b)  requires that such license plates

shall be kept clean and in a condition so as to be easily readable and shall not be covered by glass or any plastic material, and shall not be knowingly covered or coated with any artificial or synthetic material or substance that conceals or obscures such number plates or that distorts a recorded or photographic image of such number plates, and the view of such number plates shall not be obstructed by any part of the vehicle or by anything carried thereon, except for a receiver-transmitter issued by a publicly owned tolling facility in connection with electronic toll collection when such receiver-transmitter is affixed to the exterior of a vehicle in accordance with mounting instructions provided by the tolling facility.

42.     New York City Department of Transportation ("NYCDOT") rules impose similar requirements.

43.     For example, Title 34, Chapter 4 of the Rules of the City of New York ("RCNY") § 4-08(j)(2)  prohibits stopping or parking a vehicle within New York City unless the current license plate or plates issued to it are "properly" and "conspicuously displayed" – which means, among other things, that plates "must be kept clean and in a condition so as to be readable and shall not be covered by glass or any plastic material, and the view thereof shall not be obstructed by any part of the vehicle or anything carried thereon."

44.     Notwithstanding these requirements, so-called "ghost cars" – motor vehicles whose license plates  that are fake, defaced, or obscured – are, according to a July 5, 2022 joint press release from the City of New York, the NYPD, and the New York City Sheriff's Office, "fueling an epidemic of virtually untraceable cars that harm and kill pedestrians, bicyclists, and our most vulnerable – including the elderly, children, and other at-risk groups." *See* "NYPD and The NYC Sheriff's Office Crack Down On 'Ghost Cars': If you use a fake plate, we will tow, auction your car" (the "7/5/22 Release"), available online at

https://www.nyc.gov/site/nypd/news/p00051/nypd-the-nyc-sheriff-s-office-crack-down-ghost-cars-if-you-use-fake-plate-we-will-tow- (last accessed September 6, 2023).

45.    According to the City: "License plates must be easily identifiable. Covering a car's license plate with any material or substance that coats, obscures, or distorts it is illegal in New York City." *Id.*

46.    As the City noted in an August 25, 2022 New York City press release, "[o]bstructed license plates are often intended to defraud speed and red-light cameras throughout New York City — resulting in upticks in dangerous traffic violations and convincing drivers they can evade accountability." *See* "Mayor Adams, Amazon Collaborate to Crack Down On "Ghost Vehicles," Illicit License Plates In NYC" (the "8/25 Release"), available online at https://www.nyc.gov/office-of-the-mayor/news/623-22/mayor-adams-amazon-collaborate-crack-down-ghost-vehicles-illicit-license-plates-nyc (last visited September 6, 2023).

47.    Throughout 2022, City agencies including the NYPD and the Sheriff's Office, and law enforcement parties, created and deployed what they touted as "a robust ghost car enforcement initiative," according to Sheriff Anthony Miranda. According to NYPD Commissioner Keechant L. Sewell, "[t]he issue of ensuring that legitimate, legible, license plates remain a viable tool in our collective efforts to ensure safe streets demands our immediate attention, at every level" and its "urgency…is reflected in the NYPD's ongoing efforts." *See* 7/5 Release.

48.    As a result, in 2022, the NYPD claimed that it focused "on the work of patrol officers in all 77 precincts, across all neighborhoods, to crack down on obscured and illegal plates" and that the City created a "2022 Vehicle License Plates Working Group, an intelligence-driven effort" including and coordinating the work and expertise of several NYPD bureaus as

well as "several city and state agencies – including the Sheriff's office" – that the City said was designed to "tackl[e] the increasing problem of illegal and obscured registration plates." *Id.*

49.    Despite the clear danger presented by ghost cars, and the City's claimed efforts, the ghost car epidemic remains in full swing.

50.    In response, throughout 2022, some people who saw ghost cars on the City streets reported them to the City and/or the NYPD, typically either through the City's 311 or 911 systems, and also through social media such as Twitter.  NYPD routinely closes such complaints without taking any action in response to 311 complaints.

51.    The City has encouraged such reporting from private people. For example, the City has encouraged people to "[c]all 911 to report someone driving a vehicle with" ghost plates such as "unauthorized paper license plates." *See*

https://portal.311.nyc.gov/article/?kanumber=KA-03492 (last accessed September 6, 2023).

**Background on Mr. White's documenting and recording ghost plates**

52.    Mr. White is one of many people who has a history of reporting vehicles with ghost plates to the City, including, but not limited to, via 311, in response to the ghost plate epidemic and the City's encouragement of citizen reporting related to it.

53.    For example, whole Twitter accounts are dedicated to documenting and reporting vehicles with defaced and otherwise altered plates parked in New York City. *See, e.g.,*

https://twitter.com/defacedplateNYC (last accessed September 6, 2023).

54.    Prior to his November 11, 2022 arrest, in and before 2022, Mr. White had noticed and documented many motor vehicles with defaced, obscured, fake, and missing license plates.

55.    In that time period, Mr. White also made several complaints with 311 reporting such vehicles on his morning bike commute to work, all of which were promptly closed by 311

with no actions taken even though the offending vehicles remained at the subject reported locations.

56.     On at least one occasion, Mr. White remained at the scene for an extended period of time and when the police did finally show up, they dismissed Mr. White's complaint without verifying that the paper plate pasted to the inside rear window was legitimate.

57.     After Mr. White's arrest, Mr. White has substantially refrained from and curtailed his reporting and documenting ghost plates based on NYPD's and the City's failure to take such conduct more seriously and in falsely arresting Mr. White on November 11, 2022, and causing him to be prosecuted, as described below.

**Background on Defendant Sholem Klein**

58.     Defendant Klein has a long history of volunteering in a leadership role within a "Shomrim" group called the Rockaway Nassau Safety Patrol ("RNSP"), which was founded in 2011 (*see https://rnsafetypatrol.org/* (last accessed September 6, 2023)).

59.     "Shomrim" means "guards" or "watchers" in Hebrew.

60.     In some places – and particularly in Orthodox Jewish neighborhoods - people form "Shomrim" groups to perform volunteer safety patrols and other functions.

61.     The RNSP works closely with the NYPD, including, but not limited to, the NYPD's 100th and 101st Precinct, and the Nassau County Police Department.

62.     For example, as reported in Julianne Cuba's February 9, 2023 *StreetsblogNYC* article, "EXCLU: Driver Who Sicced NYPD on Lawyer Adam White For 'Criminal Mischief' on Defaced Plate is Cop-Adjacent," available online at

https://nyc.streetsblog.org/2023/02/09/exclu-driver-who-sicced-nypd-on-lawyer-adam-white-for-

[criminal-mischief-on-defaced-plate-is-cop-adjacent](criminal-mischief-on-defaced-plate-is-cop-adjacent) (last accessed September 11, 2023), it "is clear is that Klein has NYPD cops on speed dial":

> According to social media accounts, Klein works closely with the 100th and 101st Precincts, as well as the Nassau County PD. They have fun together, too, playing in a first responder's softball game, according to pictures of Klein that StreetsblogNYC saw before he locked his social media account, as well as public police accounts.

63.     Also as reported in that *StreetsblogNYC* article, on August 17, 2022, the Commanding Officer of the NYPD's Brooklyn South unit, Assistant Chief Michael Kemper, which oversees the 78th Precinct where Mr. White was arrested on November 11, 2022 based on Defendant Klein's false complaint, tweeted out pictures of Defendant Klein along with Assistant Chief Kemper and other NYPD members at a Shomrim barbeque, stating: "Was honored to attend the Annual Brooklyn South Safety Patrol @bpshomrim BBQ – in recognition of the hard work, courage & sacrifices exhibited by their dedicated members. @FlatbushShomrim @ShomrimCH" *See* [https://twitter.com/NYPDBklynSouth/status/1560035674639765504](https://twitter.com/NYPDBklynSouth/status/1560035674639765504) and [https://twitter.com/NYPDBklynSouth/status/1560035674639765504/photo/3](https://twitter.com/NYPDBklynSouth/status/1560035674639765504/photo/3) (last accessed September 6, 2023).

64.     Defendant Klein has pleaded guilty to engaging in illegal and fraudulent misconduct, aside from the misconduct directed at Mr. White in this matter.

65.     For example, in 2004, Defendant Klein was indicted, as the United States Attorney's Office for the Eastern District of New York described it, "in connection with a massive corporate fraud scheme that led to the bankruptcy of Allou Healthcare, Inc. ("Allou"), an arson that damaged Allou's Brooklyn warehouse and that served as the basis for fraudulent claims submitted by the defendants to Allou's insurance carriers, and a bribery scheme intended to falsify the Fire Marshal's report on the arson." *See* June 17, 2004 Press Release – "Top

14

Corporate Officers of Allou Healthcare Indicted in Massive Corporate Fraud, Arson, insurance Fraud and Bribery Schemes,"

https://www.nyc.gov/assets/doi/downloads/pdf/prallou_indictment_3.pdf (last accessed September 6, 2023).

66.     As stated in the press release's summary of the indictment, according to the indictment, Defendant Klein "sought to bribe a New York City Fire Marshal to change the Fire Department's official report" and "obstructed the federal grand jury investigation into the fire by fabricating and planting evidence, namely burned electric space heaters, in the fire debris." *Id.*; *see also United States v. Sholem Klein, et al.,* EDNY Docket No. 04 CR 558 (JG), June 16, 2004 Indictment.

67.     On August 1, 2008, Hon. John Gleeson sentenced Defendant Klein based on a guilty plea on felony conspiracy to commit fraud charges to 4 years' probation, 150 hours of community service, and a $100 Special Assessment. *See* ECF 209, EDNY Docket No. 04 CR 558 (JG).

68.     Additionally, Defendant Klein has a history of utilizing a piece of plastic to obscure the license plate number on his Black Chevrolet Tahoe Sports Utility Vehicle ("SUV").

69.     For example, at around 10:30 a.m. on August 5, 2022, Mr. White saw, and took pictures of, Defendant Klein's parked Chevrolet Tahoe SUV, including the following picture:



70.     That picture shows a piece of plastic wedged into the plastic frame of Defendant Klein's license plate cover, obscuring one letter on Defendant Klein's license plate.

71.     Upon information and belief, that Chevrolet Tahoe SUV is a vehicle that Defendant Klein drives while volunteering with the Rockaway Nassau Safety Patrol.

**Mr. White's November 11, 2022 "Crim Mis" arrest**

72.     On November 11, 2022 at approximately 9:40 a.m., while riding his bicycle northbound in the designated bicycle lane on 4th Avenue near St. Mark's Avenue in Brooklyn, Mr. White saw a black Chevrolet Tahoe SUV parked adjacent to the bicycle lane that had one of its rear license plate identifying characters obstructed by a black object.

73.     The SUV had illegally tinted windows and a removable emergency light prominently displayed on its dashboard.

74.     Mr. White stopped riding to investigate with a view toward reporting the obscured license plate to the City and/or the NYPD in connection with violations of New York Vehicle and Traffic Law § 402 and Title 34 of the Rules of the City of New York § 4-08(2)(j), which, among other things, prohibit obscuring a license plate with plastic or other matter.

75. When Mr. White inspected the black object that was obstructing one of the characters, he saw it was a black piece of plastic that had been wedged into the license plate cover.

76. Mr. White took a picture of the obscured license plate showing the black piece of plastic with his camera at approximately 9:54 a.m.:



77. The black piece of plastic wedged into the license plate cover appeared to serve no other purpose except to obstruct the license plate information.

78. In order to allow him to record the license plate information and report the SUV operator for the VTL and RCNY violations Mr. White had observed, Mr. White removed the black piece of plastic wedged into the license plate cover so that the entire license plate was exposed and visible.

79.     Mr. White then took a picture of the exposed license plate:



80.     When Mr. White removed the piece of plastic, he did not break or cause any damage to the license plate, plate cover, or any other property.

81.     Nor did he did not intend to damage the license plate, the plate cover, or any other property.

82.     After Mr. White removed the piece of plastic, he saw the SUV operator, later identified as Defendant Sholem Klein, exit his vehicle.

83.     Defendant Klein grabbed the piece of plastic from Mr. White.

84.     He yelled at Mr. White, in substance, that he was going to call the police, and for Mr. White to remain at the scene.

85.     Mr. White did.

86.     Upon information and belief, Defendant Klein then called 911 from his cell phone at around 9:57 a.m.

87.     According to NYPD records, Defendant Klein told the 911 operator that Mr. White was "breaking his license plate."

88. A couple of minutes later, a number of the Individual NYPD Defendants from the 78th Precinct arrived at the scene, including at least Defendants Ali, Phillips, and Kaur.

89. When the first of the Individual NYPD Defendants arrived at the scene, Defendant Klein was holding the piece of plastic that Mr. White had removed from the license plate cover.

90. NYPD members spoke with them separately.

91. Defendant Klein provided the Individual NYPD Defendants who spoke with him at the scene of Mr. White's arrest, including at least Defendants Ali, Phillips, and Kaur, materially false information about Mr. White's conduct, including that Mr. White "broke" a part off of his car and that Mr. White had also "done it" a few weeks ago.

92. The information was so obviously untrue that the Individual NYPD Defendants to whom Defendant Klein communicated it knew or should have known it was false.

93. At the same time, Mr. White truthfully explained he had not damaged anything and what had actually occurred as described above– in other words, that he had merely removed the piece of plastic that was wedged under the license plate cover and obstructed a letter on the license plate itself in order to take a picture of the license plate to report that Defendant Klein had illegally covered it with the piece of plastic.

94. As Defendants Kaur, Phillips, Ullah, and Rebolledoctores interacted with Mr. White and Defendant Klein, Mr. White showed at least Defendants Kaur and Philips the "before" and "after" pictures of the license plate, which are reproduced above, and explained in detail that he had removed, not broken, the piece of plastic, which Defendant Klein had wedged into the license plate cover when Mr. White first came upon the scene.

95.     Mr. White asked whether the Individual NYPD Defendants present were going to issue a summons to Defendant Klein for illegally obscuring his license plate and initially got no response.

96.     At around that time, Defendant Barrett arrived on the scene.

97.     When Defendant Barrett arrived at the scene, he was the highest ranking NYPD member present.

98.     When Defendant Barrett arrived at the scene, he walked near Defendant Klein's SUV, which had a removable emergency light prominently displayed on its dashboard.

99.     When Defendant Barrett arrived at the scene, Defendant Klein greeted him as "boss" – a term NYPD members use to refer to their supervisors.

100.    When Defendant Barrett arrived at the scene, Defendant Kaur knew, or should have known, that Mr. White had removed, not broken, the piece of plastic, which Defendant Klein wedged into the license plate cover with Mr. White first came upon the scene.

101.    For example, as described above, Mr. White had explained to Defendant Kaur that he had merely removed the piece of plastic that Defendant Klein had  wedged under his license plate frame and showed Defendant Kaur the "before" and "after" pictures demonstrating he was telling the truth.

102.    Further, upon information and belief, particularly in light of the ongoing epidemic of ghost license plates, each and every Defendant was, or should have been, familiar with the manner in which Defendant Klein's license plate was obscured, and recognized, or should have recognized, it as an attempt to illegally hide the license plate information, including, but not limited to, because Defendant City trains members of the NYPD to recognize defaced, obscured, and otherwise illegal plates.

103. Additionally, Defendant Kaur made statements showing she knew and understood that Mr. White was telling the truth and that Mr. White had removed – not broken – the piece of plastic.

104. For example, Defendant Kaur explained to Defendant Barrett that Mr. White had removed a piece of plastic that Mr. White said, and Mr. White's picture showed, had already been wedged into – and was not a part of – the license plate cover when Mr. White first encountered it.

105. Beyond that, Defendant Kaur took Mr. White's phone and showed Defendant Barrett the "before" and "after" pictures and explained: "So, the piece was already broken… he just pulled it off… he said it was already broken off."

106. Defendant Barrett then asked Defendant Kaur, "You don't want it?" – apparently referring to Mr. White's arrest.

107. At around the same time Defendant Kaur began speaking with Defendant Barrett as described above, Defendant Ali had been speaking with Defendant Klein, who told him Mr. White had "damaged his car and 'broken off'" a piece and that Defendant Klein had seen Mr. White "two weeks ago do the same thing" to his car.

108. Defendant Ali took the piece of plastic from Defendant Klein.

109. Defendant Klein then told Defendant Ali: "I do volunteer with the 101 Precinct… I also work with the 4th Precinct National Council… Shomrim, Shomrim."

110. As seen above, upon information and belief, Defendant Klein has a history of volunteering with a volunteer Shomrim group called the Rockaway Nassau Safety Patrol that works closely with the NYPD.

111.    Additionally, also as seen above, when Defendant Barrett arrived at the scene, Defendant Klein greeted him as "boss"– a term NYPD members use to greet supervisors.

112.    Just after Defendant Klein told Defendant Ali he volunteered with the NYPD and was Shomrim, Defendant Ali then joined the conversation Defendant Kaur was having with Defendant Barrett, which is summarized above.

113.    When Defendant Barrett asked Defendant Kaur what Mr. White said had happened, Defendant Kaur explained, again, that Mr. White had "just removed"– not broken– the piece of plastic, using the piece of plastic Defendant Ali had taken from Defendant Klein to show how the piece had been wedged into the license plate cover when Mr. White came upon it.

114.    Then, although Defendants Barrett, Ali, Kaur, and Phillips all knew or should have known that Mr. White had not broken anything, Defendant Barrett said, "He broke this piece of plastic off."

115.    None of the other Individual NYPD Defendants corrected Defendant Barrett.

116.    Instead, Defendant Ali then repeated, "He broke it off… so… crim… mis?"

117.    Defendant Kaur then took the piece of plastic from Defendant Ali and told Defendant Barrett, "Phillips wants it," referring to Mr. White's arrest, as Defendant Phillips nodded.

118.    When Defendant Barrett and other Individual NYPD Defendants determined to arrest Mr. White based on Defendant Klein's false statements, they did not have probable cause to believe he had damaged Defendant Klein's – or anyone else's – property, let alone intentionally, but rather knew, or should have known, that he had not. There was no indication that any part of Defendant Klein's license plate cover or vehicle was damaged in any way, nor were there any tools in Mr. White's backpack, as Defendant Klein had reported.

22

119.     At around 10:10 a.m., Defendant Phillips, Kaur, Ullah, Rebolledoctores, and Ali then surrounded Mr. White as Defendant Barrett stood a few feet away and looked on.

120.     Several of them rear-cuffed him in tight, metal handcuffs.

121.     The cuffs were so tight that Mr. White complained and asked the police to loosen them.

122.     Upon information and belief, the Individual NYPD Members did not arrest, or issue any summonses or tickets to Defendant Klein for illegally obscuring his license plate.

123.     Defendants Phillips and Kaur then drove Mr. White to the NYPD's 78th Precinct.

124.     While handcuffed in the back of the patrol car, Mr. White asked the police officers in the front seat whether they were at least issuing Defendant Klein a summons for obscuring his license plate.

125.     One of the police officers eventually responded that they were not issuing Defendant Klein a summons because they had not observed that the license plate had been obstructed.

126.     When Mr. White replied to ask what they meant, given that he had showed them the pictures showing how Defendant Klein had in fact obstructed his own license plate, Defendants Phillips and Kaur had no response.

127.     After arriving at the NYPD's 78th Precinct, Defendants Phillips and Kaur processed Mr. White's arrest under the supervision of other NYPD members including Defendant NYPD Sgt. Kurt Klenke, with Defendant Phillips as the designated "arresting officer."

128.     According to NYPD records created by Defendant Phillips, under the supervision and with approval of at least Defendant Klenke, related to charges that Mr. White violated New

23

York Penal Law ("PL") § 145.00(1) - "Criminal Mischief in the Fourth Degree" - Mr. White "did damage" Defendant Klein's "plate cover on vehicle causing $10 USC in damages."

129.     Upon information and belief, one or more of the Individual NYPD Members also seized and vouchered the plastic plate cover piece as evidence of Mr. White's "crime."

130.     At the NYPD's 78th Precinct, a number of the Individual NYPD Members, including, but not limited to, Defendants Klenke and Phillips, detained Mr. White in a holding cell for approximately five hours before releasing him with a Desk Appearance Ticket (the "DAT") bearing DAT Serial No. 078-0021 signed by Defendants Phillips and Klenke.

### Mr. White's "Criminal Mischief" prosecution and Defendant Klein's related false statements

131.     The DAT required Mr. White to appear in person on December 1, 2022 in Kings County Criminal Court.

132.     The DAT lists New York Penal Law ("PL") § 145.00(1) as the "Offense Charged."

133.     A PL § 145.00(1) violation is a class A misdemeanor criminal charge.

134.     According to the DAT, Mr. White's arrest was processed under Arrest No. K22647726.

135.     Officer Phillips, Officer Kaur, Officer Ali, Sgt. Barrett, Sgt. Klenke, and the other NYPD members involved in investigating the incident, arresting Mr. White, and processing the arrest, knew, or should have known that there was no probable cause to arrest or prosecute Mr. White for a PL § 145.00(1) violation, or on any other grounds, including, but not limited to, because Mr. White had not damaged Defendant Klein's property, and because, even if he had, there was no reason for police to believe he did so intentionally.

24

136.    Mr. White retained Gideon Orion Oliver as criminal defense counsel to represent him in responding to the DAT.

137.    On November 30 and December 1, 2022, the Office of the Kings County District Attorney ("KCDA") informed Mr. White and counsel that the KCDA's Office had declined to prosecute.

138.    According to records obtained from the KCDA's Office through a Freedom of Information Law ("FOIL") request in February of 2023, the KCDA's Office declinesd to prosecute the case due to "Insufficient Evidence to Prosecute" with the notation: "Insufficient evidence to prosecute due to being unable to prove that def intended to damage CWs license plate."

139.    The KCDA's Office also noted that the police "did not recover any pliers or objects from" Mr. White and that, according to Officer Phillips, Defendant Klein had not mentioned anything about "any object being used to damage" his property at the scene of Mr. White's arrest, even though Defendant Klein had told police on the scene that Mr. White had used tools that were in his backpack to damage his plate cover.

140.    In addition to the false statements that Defendant Klein made to the police that Mr. White had damaged his property on November 11, 2022, and that Mr. White had done so "several weeks" before, Defendant Klein made numerous other false statements to the KCDA's Office.

141.    For example, according to the records obtained from the KCDA, Defendant Klein told the KCDA's Office that, on August 5, 2022, he personally saw Mr. White break the border of his plate cover with a plier, scratched his bumper, took pictures of his vehicle, flee on a bicycle, then post on Twitter about the incident.

25

142.     That was a simply untrue.

143.     And because Defendant Klein knew it was not true, it was a lie.

144.     In fact, on August 5, 2022, Mr. White had not broken the border of Defendant
Klein's plate cover, or anything else, or scratched his bumper, or otherwise damaged his property
in any way.

145.     Rather, at around 10:30 a.m. on August 5, 2022, Mr. White saw, and took pictures
of, Defendant Klein's parked SUV, including the picture below:



146.     That picture shows the same piece of plastic that Mr. White saw obscuring
Defendant Klein's license plate on November 11, 2022 was also obscuring Defendant Klein's
license plate on the morning of August 5, 2022.

147.     Defendant Klein further told the KCDA's Office that, on November 11, 2022, he
was in his SUV doing some things from work when he heard a noise, looked in his rearview
mirror, and saw Mr. White.

148.     He claimed he then exited the SUV and then saw Mr. White break a piece of the
rear license plate border with a plier.

149.     Defendant Klein further claimed he had not been covering his rear license plate
on November 11, 2022.

150.    As seen above, many of Defendant Klein's statements to the KCDA's Office, both about Mr. White's conduct and about Defendant Klein's own conduct, were simply and demonstrably false.

## FIRST CLAIM FOR RELIEF

### Against Defendant Klein

### For false arrest under New York common law

151.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

152.    Defendant Klein seized Plaintiff and/or caused the Individual NYPD Defendants to seize Plaintiff without privilege or lawful justification.

153.    Defendants' seizure of Plaintiff was unreasonable.

154.    Plaintiff did not consent to and was conscious of his confinement by Defendants.

155.    Defendants did not have probable cause to seize, detain, arrest, or prosecute Plaintiff.

156.    As a result of Defendant Klein's acts and omissions, Defendant Klein deprived Plaintiff of Plaintiff's legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

157.    Defendant Klein's unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against him.

## SECOND CLAIM FOR RELIEF

### Against Defendant Klein

### For malicious prosecution under New York common law

158.    Plaintiff incorporates by reference the allegations set forth in all preceding and

following paragraphs as if fully set forth herein.

159. Defendant Klein misrepresented and falsified evidence to the Individual NYPD Defendants and the KCDA's Office and/or failed to make a full statement of the relevant evidence – including potentially exculpatory evidence - to the prosecutor.

160. Defendant Klein was directly and actively involved in the initiation of criminal proceedings against Plaintiff.

161. Defendant Klein and the Individual NYPD Defendants lacked probable cause to initiate criminal proceedings against Plaintiff.

162. Defendant Klein acted with malice in initiating criminal proceedings against Plaintiff.

163. Notwithstanding Defendants' misconduct, the criminal proceeding against Plaintiff was favorably terminated on the merits.

164. As a result of Defendant Klein's acts and omissions, Defendant Klein deprived Plaintiff of Plaintiff's legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

165. Defendant Klein's unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against him.

### THIRD CLAIM FOR RELIEF

**Against Defendant Klein**

**For abuse of process under New York common law**

166. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

167. Without excuse or justification, intending to harm Mr. White, Defendant Klein

caused the Individual NYPD Defendants to issue Mr. White a Desk Appearance Ticket compelling Mr. White to appear and answer to criminal charges, in order to obtain a collateral objective outside the legitimate means of that process.

168.　As a result of Defendant Klein's acts and omissions, Defendant Klein deprived Plaintiff of Plaintiff's legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

169.　Defendant Klein's unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against him.

## FOURTH CLAIM FOR RELIEF

### Unlawful Seizure / False Arrest

### Against the Individual NYPD Defendants

### Pursuant to 42 U.S.C. Section 1983 for violating Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution

170.　Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

171.　The Individual NYPD Defendants seized Plaintiff without a judicial warrant authorizing them to seize Plaintiff.

172.　The Individual NYPD Defendants seized Plaintiff without privilege or lawful justification.

173.　The Individual NYPD Defendants' seizure of Plaintiff was unreasonable.

174.　Plaintiff did not consent to and was conscious of his confinement by the Individual NYPD Defendants.

175.　The Individual NYPD Defendants did not have probable cause to seize, detain, or

arrest Plaintiff.

176.     As a result of the Individual NYPD Defendants' acts and omissions, the

Individual NYPD Defendants deprived Plaintiff of Plaintiff's legal rights, caused Plaintiff

emotional injury, and/or otherwise damaged and injured Plaintiff.

177.     The Individual NYPD Defendants' unlawful conduct was willful, malicious,

oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed

against them.

**FIFTH CLAIM FOR RELIEF**

**First Amendment Retaliation**

**Against the Individual NYPD Defendants**

**Pursuant to 42 U.S.C. Section 1983 for violating Plaintiff's rights under the First
and Fourteenth Amendments to the United States Constitution**

178.     Plaintiff incorporates by reference the allegations set forth in all preceding and

following paragraphs as if fully set forth herein.

179.     The Individual NYPD Defendants retaliated against Plaintiff for engaging in

speech and/or conduct protected by the First Amendment to the United States Constitution

and/or the New York State Constitution.

180.     The Individual NYPD Defendants engaged in the acts and omissions complained

of herein because of Plaintiff's protected speech and/or conduct.

181.     The Individual NYPD Defendants engaged in the acts and omissions complained

of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or

conduct.

182.     The Individual NYPD Defendants engaged in the acts and omissions complained

30

of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

183.    As a result of the Individual NYPD Defendants' acts and omissions, the Individual NYPD Defendants deprived Plaintiff of Plaintiff's legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

184.    The Individual NYPD Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SIXTH CLAIM FOR RELIEF

### Deprivation of Fair Trial Rights

### Against the Individual NYPD Defendants

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Protected Under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution***

185.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

186.    Defendants Barrett, Phillips, and Klenke fabricated evidence of a material nature likely to influence a jury's decision and intentionally forwarded that evidence to the KCDA's Office, as a result of which Plaintiff suffered deprivations of liberty and/or property.

187.    For example, noting Defendant Barrett's involvement, Defendant Phillips' arrest processing paperwork – which indicates Defendant Klenke as the approving supervisor – states that Mr. White "did damage" Defendant Klein's "vehicle plate cover on vehicle causing $10 USC in damages."

188.    Upon information and belief, Defendants Barrett, Phillips, and/or Klenke

forwarded that official NYPD arrest processing paperwork and made those statements to the KCDA's Office.

190. The other Individual NYPD Defendants failed to intervene with respect to Defendants Barrett, Phillips, and Klenke's misconduct in creating and forwarding that paperwork and making those statements to the KCDA's Office.

190. As a result of the Individual NYPD Defendants' acts and omissions, the Individual NYPD Defendants deprived Plaintiff of Plaintiff's legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

191. The Individual NYPD Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SEVENTH CLAIM FOR RELIEF

### Municipal Liability

### Against Defendant City of New York

*Pursuant to 42 U.S.C. 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiff's Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution*

192. Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

193. At all times relevant to Plaintiff's claims herein, Defendant City was and is responsible for ensuring that reasonable and appropriate training, supervision, investigations, and discipline were and are in place within the NYPD.

194. Defendant City has displayed deliberate indifference to Plaintiff's rights secured by the First, Fourth, Fifth, Sixth, and/or Fourteenth Amendment to the United States

Constitution, as well as related provisions of the New York State Constitution and New York laws, for example through the City's knowledge of, and failures to take steps to address, the customs, practices, and usages of the City complained of herein, which are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City, as well as Defendant City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline the Individual NYPD Defendants in this case, and other NYPD officers who have used "ghost plates" and/or "ghost cars", despite knowledge of their wrongful acts.

195.    Additionally, all of the wrongful acts or omissions complained of herein were carried out by the Individual NYPD Defendants and other City agents, including NYPD members, pursuant to customs, practices, and usages of the City that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City.

196.    For example, at all times relevant to Plaintiff's claims herein, Defendant City had, and has, *de facto* policies, practices, and customs of allowing NYPD members to ignore or otherwise fail to respond appropriately to complaints about vehicles with "ghost plates," including through issuing legal process and/or making arrests in response to identifying such vehicles, and of allowing harassment and/or retaliation against people who lodge them.

197.    Moreover, at all times relevant to Plaintiff's claims herein, Defendant City knew or should have known that NYPD members had a practice and custom of closing 311 complaints about such vehicles without first having properly investigated and/or taken appropriate law enforcement action in response to the conditions reported in the complaints.

33

198. The acts and omissions and injuries complained of herein are a direct and proximate result of those *de facto* policies, practices, and customs.

199. The acts and omissions and injuries complained of herein are also a direct and proximate result of the failures of Defendant City and the NYPD properly to train, supervise, investigate, and discipline the Individual NYPD Defendants and other NYPD members.

200. For example, at all times relevant to Plaintiff's claims herein, Defendant City knew or should have known of the need properly to train, supervise, investigate, and discipline NYPD members with respect to:

    a. identifying illegally obscured "ghost plates";

    b. responding appropriately to illegally obscured plates once identified, including, but not limited to, through prompt and meaningful investigation and, where warranted, by issuing legal process and/or making arrests and/or taking other appropriate law enforcement action;

    c. probable cause to arrest and/or issue a C-Summons or Desk Appearance Ticket ("DAT") for violating VTL § 402(b), 34 RCNY § 4-08(j)(2), or other laws requiring that license plates must be properly and conspicuously displayed and kept in a clean and readable condition;

    d. responding appropriately to citizen complaints about illegally obscured "ghost plates" including, but not limited to, through prompt and meaningful investigation and, where warranted, by issuing legal process and/or making arrests and/or taking other appropriate law enforcement action;

e. responding appropriately to citizen complaints about illegally obscured "ghost plates" in a manner that protects the rights of those who complain about such illegally parked vehicles; and

f. probable cause to arrest and/or prosecute for committing Criminal Mischief under New York Penal Law related to illegally obscured "ghost plates," including, but not limited to, under PL § 145.00(1).

201. Instead, however, upon information and belief, the NYPD's training with respect to those topics has been, and remains, insufficient.

202. Additionally, Defendant City and NYPD members responsible to supervise, investigate, and/or discipline NYPD members in performing their duties, have failed to supervise, investigate, and/or discipline the Individual NYPD Defendants with respect to their handling of Defendant Klein's illegally obscured license plate and Mr. White's complaint about it, including, but not limited to, with respect to the Individual NYPD Defendants' conduct in arresting and prosecuting Mr. White.

203. Upon information and belief, Defendant City policymakers in the areas of NYPD training, supervision, investigation, and discipline knew, or should have known, about Mr. White's arrest and prosecution, as well as Defendant Klein's and the Individual NYPD Defendants' misconduct described herein, since at least November of 2022, yet, upon information and belief, Defendant City has not taken meaningful steps to address the deficiencies in training, to supervise, investigate, or discipline the Individual NYPD Defendants, or to address Defendant Klein's false statements made to the Individual NYPD Members and the KCDA's Office.

204.    In terms of Defendant City's knowledge, soon after Mr. White's arrest, on

November 14, 2022, Mr. White tweeted about his experiences -

https://twitter.com/adamlaw50/status/1592183776997965825 - in a thread that went viral.

205.    Also on November 14, 2022, *Hell Gate* published "NYPD Arrests and Jails

Cyclist For Fixing Driver's Illegally Obscured License Plate: Meanwhile, the police let the driver

off without a summons" by Christopher Robbins, available online at

https://hellgatenyc.com/nypd-arrests-cyclist-for-fixing-plate (last accessed September 11, 2023),

and *StreetsblogNYC* published "Cops Arrest Famed Bike Lawyer for Fixing a Driver's Obscured

Plate," by Julianne Cuba, available online at https://nyc.streetsblog.org/2022/11/14/cops-arrests-

bike-lawyer-for-fixing-a-drivers-obscured-license-plate (last accessed September 11, 2023),

covering Mr. White's experiences.

206.    Additionally, on November 15, 2022, in a thread that went viral, New York City

Council Member Shahana Hanif tweeted: "I am deeply disturbed to hear of the @NYPD78Pct's

actions in this case. It is shocking how the NYPD continues to prioritize unlawful and reckless

car owners while harassing cyclists and pedestrians at every opportunity. We need

accountability." *See* https://twitter.com/CMShahanaHanif/status/1592611803905003521 (last

accessed September 11, 2023).

207.    Council Member Hanif called on the 78th Precinct's Commanding Officer,

Captain Frantz Souffrant, to investigate and explain.

208.    On November 15, 2022, New York State Assemblymember Robert Carroll

tweeted: "Preposterous. So glad the #NYPD is arresting my constituent for removing a piece of

tape from a licenses plate that was deliberately placed there to evade tolls, red light and speed

cameras. Wish we could get traffic enforcement on dangerous Caton Avenue." *See*

https://twitter.com/Bobby4Brooklyn/status/1592661864953307137 (last accessed September 11, 2023).

209.    Reporting on Council Member Hanif's thread, on November 16, 2022, *StreetsblogNYC* published "Brooklyn Council Member Blasts Cops for Arresting Famed Bike Lawyer For Fixing Defaced Plate" by Julianne Cuba, available online at https://nyc.streetsblog.org/2022/11/16/brooklyn-council-member-blasts-cops-for-arresting-famed-bike-lawyer-for-fixing-defaced-plate (last accessed September 11, 2023).

210.    Then, on November 30, 2022, *StreetsblogNYC* published "Freedom for Adam White! Brooklyn DA Declines to Prosecute 'Criminal Mischief' Maker", available online at https://nyc.streetsblog.org/2022/11/30/freedom-for-adam-white-brooklyn-da-declines-to-prosecute-criminal-mischief-maker (last accessed September 11, 2023), reporting on the KCDA's Office's statement that it would be declining to prosecute the case, citing "'insufficient evidence to prosecute.'"

211.    Also on November 30, 2022, *StreetsblogNYC* also published "Captain of 78th Precinct Defends Arrest of Famed Bike Lawyer For Fixing Defaced Plate" by Julianne Cuba, available online at https://nyc.streetsblog.org/2022/11/30/captain-of-78th-precinct-defends-arrest-of-famed-bike-lawyer-for-fixing-defaced-plate (last accessed September 11, 2023), in which 78th Precinct Souffrant falsely "claimed that White 'did break something that was on the vehicle'" and also stated that NYPD members "'can only write summonses to vehicles we personally observe – not a picture…If you're calling [311] for a particular vehicle, by the time the officer arrives, the obstruction is removed, but you have a picture of it, we cannot write a summons, we actually have to personally observe the issue.'"

212.     Additionally, on December 1, 2022 – Mr. White's DAT return date - Mr. White participated in a press conference at Borough Hall as regarding his arrest and prosecution, as well as related more broadly to the issue of "ghost plates," at which numerous elected officials, including New York State Senator Alexander Gounardes, New York State Assemblymember Jo Anne Simon, New York City Councilmember Shahana Hanif, and New York City Councilmember Lincoln Restler appeared and spoke.

213.     At the press conference, among other things, speakers called on Defendant City to investigate, and take steps to address, Mr. White's false arrest and prosecution.

214.     The press conference generated significant additional press attention on December 1, 2022. *See, e.g., Streetsblog,* "Attorney Arrested for 'Criminal Mischief' Charge Will Sue Driver For Wrongful Arrest," by Julianne Cuba, available online at https://nyc.streetsblog.org/2022/12/01/attorney-arrested-for-criminal-mischief-charge-will-sue-driver-for-wrongful-arrest (last accessed September 11, 2023); *Hell Gate*, "The NYPD Messed With the Wrong cyclist: License Plate Vigilante Beats Case, Vows to Sue Police," by Christopher Robbins, available online at https://hellgatenyc.com/adam-white-cyclist-obscured-plate-sue-nypd (last accessed September 11, 2023); *PIX11*, "Brooklyn lawyer arrested after removing obstruction from driver's license plate," by Greg Mocker, available online at https://pix11.com/news/local-news/brooklyn/brooklyn-lawyer-arrested-after-removing-obstruction-from-drivers-license-plate/ (last accessed September 11, 2023).

215.     Additionally, inspired by Mr. White's November 11, 2022 arrest, beginning on November 15, 2022, *StreetsblogNYC* Editor Gertz Kuntzman engaged in what he called a "campaign to rein in reckless drivers" by "biking around town for about three months fixing intentionally defaced license plates, peeling off tape that's obscuring a number or letter, and

removing illegal covers," as a result of which he documented "59 police officers, firefighters and other law enforcement personnel doctoring their plate to avoid speed or toll cameras" *See* Kuntzman, Gersh. "The End of 'Criminal Mischief'? A Reflection on Three Months of Field Work." *StreetsblogNYC*, January 25, 2023 (the "Criminal Mischief Article"), available online at https://nyc.streetsblog.org/2023/01/25/the-end-of-criminal-mischief-an-activist-reflects-on-three-months-of-field-work (last accessed September 11, 2023); *see also* "Criminal Mischief follow up sheet" (documenting each of the 59 incidents referred to in the Criminal Mischief Article, including links to tweets and video evidence) , available online at https://docs.google.com/spreadsheets/d/1h2GraR-2MVP2XmRSOjsVEWdQQw9Lig7oXLIRjJDTTog/ (last accessed September 11, 2023).

216. As stated in the Criminal Mischief Article, "No one video tells the full story, but taken together, the videos reveal a pattern of low-level corruption that continues simply because so little is done to stop it."

217. Also as stated in the Criminal Mischief Article, Mr. White's arrest and experiences, as well as Mr. Kuntzman's "Criminal Mischief" campaign, were the subject of "lots of media attention" between November of 2022 and January of 2023.

218. For example, on December 2, 2022, Pat Kiernan and Jamie Stetler on *NY1*'s "Mornings on 1" interviewed Mr. Kuntzmann about the campaign. *See* Brosnan, Erica. "Transit blogger documents license plate vandalism in NYC." *Spectrum News NY1*, December 2, 2022, available online at https://ny1.com/nyc/all-boroughs/mornings-on-1/2022/12/02/transit-blogger-documents-license-plate-vandalism-in-nyc (last accessed September 11, 2023) (embedding video of the interview).

219.    Beyond that, on December 14, 2022, *Gothamist* published "Guerilla activists fight NYC drivers who hide license plates to evade tolls and tickets," by Stephen Nessen, available online at https://gothamist.com/news/guerilla-activists-fight-back-against-nyc-drivers-who-hide-license-plates-to-evade-tolls-and-tickets (last accessed September 11, 2023), and *WNYC* published "NYC advocates fight 'ghost cars' with illegal license plates," also by Stephen Nessen, available online at https://www.wnyc.org/story/advocates-address-ghost-cars-and-covered-license-plates-themselves/ (last accessed September 11, 2023), reporting on – among other things - Mr. White's experiences, Mr. Kuntzman's "Criminal Mischief" campaign, and Defendant City's lack of meaningful response.

220.    Additionally, on December 17, 2022, *The New York Times* published "They Dispense Street Justice, One Defaced License Plate at a Time," by Corey Kilgannon, available online at https://www.nytimes.com/2022/12/17/nyregion/license-plate-vigilantes.html (last accessed September 11, 2023), reporting on – among other things – Mr. White's experiences and Defendant City's lack of meaning response, as well as Mr. Kuntzman's "Criminal Mischief" campaign.

221.    Additionally, on January 16, 2023, *The New Yorker* published "At Large With New York's One-Man Crime Spree" by Dan Greene, available online at https://www.newyorker.com/magazine/2023/01/23/at-large-with-new-yorks-one-man-crime-spree (last accessed September 11, 2023).

222.    As noted in the Criminal Mischief Article, notwithstanding the publicity around Mr. White's experiences and Mr. Kuntzman's campaign, the only response from "City Call and … 1 Police Plaza" was "[c]rickets" until the publication of the Criminal Mischief Article on January 25, 2023.

223. Then, after the initial publication of the Criminal Mischief Article on January 25, 2023, a City Hall spokesperson sent Mr. Kuntzman the following statement on behalf of Defendant City:

> Obscuring and defacing license plates is against the law. Under the Adams administration, New York City has been a leader in expanding automated traffic enforcement and holding drivers accountable for illegal and reckless behavior — cracking down on "ghost vehicles," strengthening enforcement of the city's law prohibiting the sale of 'camera blockers,' and towing thousands of vehicles with illegal plates last year. The relevant city agency will review each incident of alleged violations and evaluate them for potential disciplinary action.

224. Additionally, on January 18, 2023, New York City Councilwoman Selvena Brooks-Powers, who is, among other things, the Chair of the City Council's Transportation Committee, tweeted that "[t]here will be a hearing on obscured plates" with a "date [that] has not been confirmed yet." *See* https://twitter.com/CMBrooksPowers/status/1615739020973056001 (last accessed September 11, 2023).

225. On March 9, 2023, *StreetsblogNYC* published "Cycle of Rage: One Hand Whitewashes the Other on NYPD Place Defacing," by Gersh Kuntzman, available online at https://nyc.streetsblog.org/2023/03/09/cycle-of-rage-one-hand-whitewashes-the-other-on-nypd-plate-defacing (last accessed September 11, 2023), reporting on  Mr. Kuntzman's further efforts, after the Criminal Mischief Article, providing further documentation of NYPD members who had "rendered their plates unreadable to the city's speed, red-light, and bus-lane violation cameras" after its publication, as well as an update on the Freedom of Information Law ("FOIL") request he had made in January asking for information about "if it had disciplined 13 cops or NYPD employees whom [Mr. Kuntzman] caught with unreadable plates in the previous two months." According to that March 9, 2023 *StreetsblogNYC* article, as to 8 of the 13 NYPD employees in question, none had been disciplined, and only two of Mr. Kuntzman's complaints

had been substantiated, resulting "in the officers receiving informative letters so that they are encouraged not to do it again."

226.    Past that, on April 24, 2023, Dave Colon reported in *StreetsblogNYC* that NYPD Chief of Patrol John Chell told the New York City Council that "he was well aware of" the issue of "covered and defaced license plates at precincts" and that, in the four months he had been Chief of Patrol, officers at each of the NYPD's 77 precincts had conducted 5,000 inspections related to NYPD "sidewalk parking, bent plates, license covers and parking violations" and that he had issued "39 'command disciplines'" - which "could cost an officer from five to 10 days of vacfation" - "and dinged an unspecified number of cops on" a NYPD tool "which impacts officers' performance reviews." *See* Colon, Dave. "Top Cop Claims NYPD's Parking Sins Not 'A Joke' To Him (And Confirms He Reads Streetsblog)," *StreetsblogNYC*, April 24, 2023, available online at https://nyc.streetsblog.org/2023/04/24/top-cop-claims-nypds-parking-sins-not-a-joke-to-him-and-confirms-he-reads-streetsblog (last accessed September 11, 2023).

227.    On top of that extensive press coverage, and the responses described above, Defendant City and/or the relevant Defendant City policymakers also knew or should have known about Mr. White's experiences, as well as Defendant Klein's and the Individual NYPD Members' related misconduct, and the lack of meaningful investigation, discipline, and/or supervision, because Mr. White put the City on notice in writing, including in litigation seeking pre-action discovery, and by filling a notice of claim and complying with the pre-suit requirements to pursue certain claims under New York law.

228.    For example, first, after learning that the KCDA's Office would decline to prosecute the case that Defendant Klein and a number of the Individual NYPD Defendants

initiated, Mr. White took immediate steps to identify Defendant Klein and to obtain documents and information to provide further support for his claims against Defendants.

229.    On December 1, 2022, Mr. White hired counsel to pursue Freedom of Information Law ("FOIL") requests to the NYPD and the KCDA's Office seeking documents and information related to his arrest and prosecution, which Mr. White's counsel filed on December 1, 2022.

230.    Additionally, also in December of 2022, Mr. White hired counsel to pursue litigation in New York State Supreme Court seeking by order to show cause certain pre-action discovery pursuant to New York Civil Practice Law and Rules § 3102(c), as well as a temporary restraining order enjoining Defendant City from destroying relevant documents, and compelling Defendant City to preserve them in anticipation of litigation.

231.    After Mr. White caused that case to be filed against Defendant City and the NYPD on January 13, 2023 under New York State Supreme Court Docket Number 150439/2023, the New York City Law Department represented the Respondents, filing papers and appearing at a show cause hearing, largely opposing the relief sought with respect to pre-action discovery.

232.    The filing of that litigation led to press attention, as well. On January 15, 2023, *AMNY* published "'Criminal mischief' lawyer sues NYPD for alleged stonewalling of crucial evidence in license plate arrest" by Ben Brachtfeld, available online at https://www.amny.com/transit/criminal-mischief-lawyer-sues-nypd-license-plate-arrest/ (last accessed September 11, 2023).

233.    After the Court issued Mr. White interim relief following February 1, 2023 oral argument on his order to show cause, the case was mooted when the KCDA's Office provided a

comprehensive response to Mr. White's December 1, 2022 FOIL request later in the evening on February 1, 2023, identifying Defendant Klein as well as the Individual NYPD Defendants and providing, among other things, bodyworn camera footage showing the investigations leading up to, and including, Mr. White's arrest.

234. Finally, as seen above, on February 9, 2023, Mr. White filed a notice of claim with the Office of the Comptroller of Defendant City, and, on May 25, 2023, Mr. White provided testimony about the incident at a hearing pursuant to New York General Municipal Law Section 50-h.

235. Mr. White's filing of the notice of claim also resulted in press, as well. On February 9, 2023, *Streetsblog* published "EXCLU: Driver Who Sicced NYPD on Lawyer Adam White For 'Criminal Mischief' on Defaced Plate is Cop-Adjacent" by Julianne Cuba, available online at https://nyc.streetsblog.org/2023/02/09/exclu-driver-who-sicced-nypd-on-lawyer-adam-white-for-criminal-mischief-on-defaced-plate-is-cop-adjacent (last accessed September 11, 2023).

236. Beyond the above, as summarized by the Honorable Brian Cogan in denying the City's motion to dismiss *Monell* claims pleaded in the First Amended Complaint (ECF 26) in a similar case — *Sherwood v. City of New York*, 22-cv-7505(BMC):

   a. "[T]hose of us who have lived in New York, we understand that there is some, from time to time and place to place without quantifying it, there is some disregard for the requirements of following the law in this kind of instance. I mean, when I walk to court everyday, and it doesn't involve this case, but I see all these vehicles with construction worker vests in the windshield and I know

what's going on and nobody else is allowed to park there." 2023-05-30 Tr. at 22:7-15.

b. "[F]rom time to time, they come down on officers for doing this kind of thing, it kind of reminds me of the scene with seeing with Claude Rains in Casa[b]lanca when he's confronted and he says, 'gambling, gambling, I'm shocked, ***shocked***. Who knew there was gambling going around there.' Because as soon as the City does anything about this, the practice resumes with impunity." *Id.* at 22:16-23:2.

237. The allegations in the First Amended Complaint in *Sherwood*, particularly those concerning the City's longstanding policy and practice of enabling illegal parking by members of the NYPD, and intimidating those who seek to challenge that practice — just like what happened here — are incorporated by reference. *See* First Amended Complaint, *Sherwood*, 22-cv-7505(BMC), ECF 26; *see in particular,* ¶¶ 123-163 (concluding "the City has allowed a culture to flourish where NYPD members feel completely comfortable — and even justified — in calling to harass members of the public who report illegally parked NYPD vehicles to 311"); 171-188

238. As summarized above, Defendant City of New York has long had actual and/or constructive knowledge of not only Mr. White's experiences and the Defendants' misconduct related thereto, but also the NYPD's inadequate training, supervision, and discipline with respect to identifying illegally obscured "ghost plates" and responding to citizen complaints about vehicles with illegally obscured "ghost plates" in a manner that protects the rights of those who complain about such illegally parked vehicles.

239. Defendant City has displayed deliberate indifference to Plaintiff's rights secured by the First Amendment to the United States Constitution, as well as related provisions of the New York State Constitution and New York laws, for example through the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline the Individual NYPD Defendants and other NYPD members, despite knowledge of their wrongful acts.

240. Defendant City has otherwise demonstrated deliberate indifference to the needs to properly train, supervise, investigate, and discipline NYPD members – including the Individual NYPD Defendants - in the areas of identifying illegally obscured "ghost plates" and responding to citizen complaints about vehicles with illegally obscured "ghost plates" in a manner that protects the rights of those who complain about such illegally parked vehicles– among others.

241. Additionally, at all times relevant to Plaintiff's claims herein, Defendant City knew or should have known that that Individual NYPD Defendants engaged in harassment of and/or retaliation against Mr. White for complaining about Defendant Klein's illegal "ghost plate."

242. The lack of supervision and discipline of the Individual NYPD Defendants are examples of the City's failures to supervise and/or discipline NYPD members whom Defendant City knew, or should have known, have engaged in harassment and/or retaliation in response to such complaints about illegally parked vehicles, including those with "ghost plates."

243. Despite ample notice of such inadequate training, supervision, and discipline, Defendant City has taken either no steps – or, alternately, no *meaningful* steps - to ensure that reasonable and appropriate types and levels of training, supervision, investigation, and discipline were or are in place to ensure that NYPD members investigate and respond appropriately to

"ghost plates" and complaints about vehicles with "ghost plates" – including the need to refrain from retaliating against the people who lodge them.

244. For example, upon information and belief, Captain Souffrant never took steps to investigate Mr. White's experiences or his subordinates' related misconduct, or to correct his false public statements about Mr. White.

245. And, beyond that, upon information and belief, Defendant City simply has not taken meaningful steps to investigate Defendant Klein's misconduct, and the misconduct committed by the Individual NYPD Members, if it has taken any steps at all, let alone to supervise or discipline those NYPD members related to it.

246. As seen above, the City has exhibited deliberate indifference to the realities that its NYPD members' *de facto* policies, practices, and customs, and the inadequate of training, supervision, investigation, and discipline described herein, would lead to the violation of individuals' constitutional rights in general, and caused the violations of Mr. White's rights in particular.

247. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

**EIGHTH CLAIM FOR RELIEF**

**Violations of New York State Law**

**Against Defendant City of New York and the Individual NYPD Defendants**

***Pursuant to New York State Common Law and the New York State Constitution***

248. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

### a. *Respondeat Superior* Liability

249.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

### b.    Assault

250.    The Individual NYPD Defendants committed assault within the meaning of New York common law against Plaintiff by intentionally placing Plaintiff in fear of imminent harmful or offensive contact, without his consent or lawful justification.

### c.    Battery

251.    The Individual NYPD Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent, without lawful justification.

### d.    False arrest/imprisonment and unreasonable detention.

252.    By the actions described above, the Individual NYPD Defendants described above did falsely arrest and/or imprison Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so.

253.    Plaintiff was conscious of the confinement and it was without Plaintiff's consent.

### e.    Malicious prosecution

254.    The Individual NYPD Defendants commenced criminal proceedings against Plaintiff maliciously and without probable cause, which were terminated in Plaintiff's favor.

48

### f.  Abuse of process

255.  Without excuse or justification, intending to harm Mr. White, the Individual Defendants issued Mr. White a Desk Appearance Ticket compelling Mr. White to appear and answer to criminal charges, in order to obtain a collateral objective outside the legitimate means of that process.

### g.  Violations of New York State Constitution

256.  Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution.

257.  A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

258.  As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

259.  The Individual NYPD Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## NINTH CLAIM FOR RELIEF

**Against Defendant City of New York and The Individual NYPD Defendants**

***Pursuant to New York City Administrative Code Title 8, Section 8***

260.  Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

261.     The above-described acts and omissions of Defendant City and the Individual NYPD Defendants violated Plaintiff's rights to be secure in his person and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

262.     As a result of the Individual NYPD Defendants' acts and omissions, the Individual NYPD Defendants deprived Plaintiff of Plaintiff's legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

263.     The Individual NYPD Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## TENTH CLAIM FOR RELIEF

### Violations of 42 U.S.C. §§ 1985 and 1986

### Against Defendant Klein and the Individual NYPD Defendants

264.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

265.     Defendants Barrett, Klenke, Ali, Kaur, Phillips, Rebolledocortes, Ullah, and Klein, as further set out above, joined together in a conspiracy to violate Mr. White's civil rights, equal protection of the laws, and equal privileges and immunities under the law.

266.     Specifically, Defendants Barrett, Klenke, Ali, Kaur, Phillips, Rebolledocortes, Ullah, and Klein reached an understanding that, notwithstanding the known-to-be false and inherently implausible nature of the claim that Mr. White somehow used his fingers to break Defendant Klein's license plate (and, in fact, did so *identically* some weeks earlier), they would falsely charge Mr. White in order to deter future reporting of Defendant Klein's illegal conduct.

50

267.     Upon information and belief, and as set out above, part of the basis for this agreement was Defendant Klein's association with law enforcement, and an attempt to provide benefits for that association.

268.     Likewise, another part of the basis for the agreement was the perception that Mr. White was *anti*-law enforcement, because his reporting conduct threatened the long-standing City policy of allowing members of the NYPD and law enforcement adjacent individuals the benefit of freely breaking traffic and parking laws.

269.     Defendants Barrett, Klenke, Ali, Kaur, Phillips, Rebolledocortes, Ullah, and Klein all took material steps in furtherance of the conspiracy, as detailed above; including, but not limited to, Mr. White's arrest itself, each Defendants' use of knowingly false statements, handcuffing Mr. White, and the like.

270.     Defendants Barrett, Klenke, Ali, Kaur, Phillips, Rebolledocortes, Ullah each also had knowledge of all of the above mentioned acts, had the power to stop those acts, and neglected and refused to do so.

271.     As a result of Defendants Barrett, Klenke, Ali, Kaur, Phillips, Rebolledocortes, Ullah, and Klein's acts and omissions, those Defendants deprived Plaintiff of Plaintiff's legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

272.     Defendants Barrett, Klenke, Ali, Kaur, Phillips, Rebolledocortes, Ullah, and Klein's, unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.    Actual and punitive damages against the Defendant Klein and the Individual NYPD Defendants in an amount to be determined at trial;

2.    Actual damages in an amount to be determined at trial against the City of New York;

3.    Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. § 1988, New York City Administrative Code Title 8, Section 8, and New York common law;

4.    An order restraining the Individual Defendants from engaging in future conduct in violation of NYCAC § 8-803, pursuant to NYCAC § 8-805(a)(3);

5.    A declaratory judgment declaring that the Individual NYPD Defendants' misconduct complained of herein violated Mr. White's rights under the First Amendment to the United States Constitution and/or the laws and/or the Constitution of the State of New York; and

6.    Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
         September 19, 2023

**GIDEON ORION OLIVER**

_____
277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

J. Remy Green
Elena L. Cohen
Jessica Massimi
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com