

277 Broadway, Suite 1501
New York, NY 10007

1825 Foster Avenue, Suite 1K
Brooklyn, NY 11230

Gideon@GideonLaw.com*
GideonLaw.com

**Office**: (718) 783-3682
**Signal**: (646) 263-3495
**Fax**: (646) 349-2914*

*Not for service*

November 22, 2023

**BY ECF**
Hon. Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

    Re:    <u>Adam White v. Sholem Klein, et al.,</u> 23-cv-6924(BMC)

Your Honor:

    I am co-counsel for Plaintiff Adam White in the case above. I write jointly with counsel for all parties, as directed by the Court, to provide a summary of the case, including the factual, jurisdictional, and legal basis for the claims and defenses, and addressing any contemplated motions. *See* ECF No. 5 as extended by the Court's October 16, 2023 Minute Order.

**I.**    **Plaintiff's Summary of the Case.**

    This summary is Plaintiff's and is taken from the Complaint (ECF No. 1). Defendants' defenses appear in Point IV below.

    As the Court likely knows, it has become increasingly common for some drivers in New York to use what are colloquially called "ghost cars" — cars whose license plates are fake, defaced, or obscured – and are, according to a July 5, 2022 joint press release from the City of New York, the NYPD, and the New York City Sheriff's Office, "fueling an epidemic of virtually untraceable cars that harm and kill pedestrians, bicyclists, and our most vulnerable – including the elderly, children, and other at-risk groups." ECF No. 1 ¶ 44.

    This case centers around attorney Adam White, a plaintiff, much as this Court put it in a case it recently heard, who is "a crusader out there who's trying to get people to" follow traffic laws.[1] Specifically, has spent significant time documenting and reporting cars with "ghost" plates to 311, as the City itself has encouraged. *Id* ¶¶ 50-57.

---

[1] *Sherwood v. City of New York*, 22-cv-7505 (EDNY 2023), May 30, 2023 Transcript of Motion to Dismiss Decision at 22:1-6 ("*Sherwood*").

The incident at the center of this case happened on November 11, 2022, when Mr. White saw Defendant Sholem Klein's license plate on which one digit was obscured by a black piece of plastic wedged into the license plate cover, capturing the illegal conduct in this picture:



ECF No. 1 ¶¶ 75-77.  Mr. White moved the piece of plastic that was obviously obscuring the plate in order to report the ghost plate and took another picture.  *Id.*  ¶¶ 78-81. Defendant Klein yelled at Plaintiff and called the police, lying and telling them that Mr. White "broke" the plate. *Id.*  ¶¶ 82-87.

When a number of New York City Police Department ("NYPD") members, who are named as the Individual Defendants, responded, Mr. Klein again lied and said Mr. White had "broken" a part of his car, and accused Mr. White of also having "done it" a few weeks ago. *Id.* ¶¶ 88-92. When the supervising Sergeant arrived at the scene, Defendant Klein greeted him as a "boss" – a term NYPD members use to refer to their supervisors – as the Sergeant walked near the removable emergency light prominently displayed on Defendant Klein's dashboard. Defendant Klein identified himself as "Shomrim" – a volunteer group that works with police - and also explicitly said that he volunteered with the NYPD. *Id.* ¶¶ 98-99, 109-111. As Plaintiff had "before" and "after" pictures on his phone, he showed them to the police, explaining truthfully what happened, including that he had never "broken" or damaged any of Defendant Klein's property. Some of them showed they knew and understood that Mr. White was telling the truth and that Mr. White had removed – not broken – the piece of plastic. *Id.* ¶¶ 93-94, 100-105, 107-108. However, just after Defendant Klein made it clear to police he was a supporter of (and volunteer with) law enforcement, Defendants elected to ignore the obvious evidence exonerating Mr. White and falsely arrest and falsely charge Mr. White. *Id.* ¶¶ 106-119, 121. They also did not arrest Defendant Klein for obscuring his license plate or otherwise. *Id.* ¶¶ 122, 124-126.

Police then processed Mr. White's arrest at the local precinct and eventually released him with a Desk Appearance Ticket related to charges they suggested that

prosecutors bring against Mr. White based on the false premise that Mr. White had violated New York Penal Law Section 145.00(1) – Criminal Mischief in the Fourth Degree – by having done "damage" to Defendant Klein's "plate cover on vehicle causing $10 USC in damages" – although police knew, or should have known, that there was no probable cause to arrest or prosecute Mr. White for Criminal Mischief or any other reason. *Id.* ¶¶ 127-135.

Then, on top of the false statements that he had made to police to get Mr. White arrested, Defendant Klein made further false statements to the Office of the Kings County District Attorney, both about the November 11, 2022 incident as well as about an encounter Mr. White had with him on August 5, 2022. *Id.* ¶¶ 140-150. Notwithstanding Defendant Klein's false statements to prosecutors, and the false statements about the incident contained in the NYPD paperwork police provided to prosecutors, on the eve of Mr. White's first appearance on the Desk Appearance Ticket, after Mr. White had retained a criminal defense attorney, the Office of the Kings County District Attorney's office declined to prosecute the case, citing that there was "insufficient evidence to prosecute" and specifically insufficient evidence at the outset that Mr. White intended to damage Mr. Klein's property. *Id.* ¶¶ 136-139.

## II.    Jurisdiction.

This case centers around claims under 42 U.S.C. §§ 1983 and 1985. It also has state law claims that grow out of the same set of facts (discussed in more detail below). Therefore, the Court has jurisdiction under 28 USC §§ 1331, 1343 and 1367.

## III.    Plaintiff's Summary of Plaintiff's Claims.

Plaintiff has claims in two groups, essentially — those against Defendant Klein, and against the other Defendants (e.g., the City Defendants), who are the City of New York and a number of individual NYPD members.

**Against Defendant Klein,** Plaintiff has a variety of state tort claims (false arrest, malicious prosecution, abuse of process) for Defendant Klein's deliberate and false statements to the police — and continued lies to the KCDA. *Id.* ¶¶ 151-169. Plaintiff also has §§ 1985 and 1986 claims growing out of the agreement apparently reached among Defendants to lie about Plaintiff's conduct. *Id.* ¶¶ 264-272.

**Against the City Defendants,** as with Defendant Klein, Plaintiff has a variety of state tort claims against the City Defendants, largely centered around their knowing choice to arrest Plaintiff with no cause. *Id.* ¶¶ 248-259. Additionally, Plaintiff has claims under the more recently-adopted provisions in New York City Administrative Code Title 8, Section 8 (which was described, when passed, as a "repeal" of qualified immunity). *Id.* ¶¶ 260-263. Likewise, Plaintiff has federal civil rights claims under § 1983 for false arrest, First Amendment retaliation, and fair trial rights deprivations, based on the same facts. *Id.* ¶¶ 170-191. Finally, Plaintiff has a *Monell* claim against the City — much like

the *Monell* claim this Court found well pled in *Sherwood* (*see* n. 1 above) — based on the City's Captain Renault-like pattern of being "shocked, shocked" about ghost plates, *see Sherwood* at 22:16-23:2, as well as, among other things, its "*de facto* policies, practices, and customs of allowing NYPD members to ignore or otherwise fail to respond appropriately to complaints about vehicles with "ghost plates," including through issuing legal process and/or making arrests in response to identifying such vehicles, and of allowing harassment and/or retaliation against people who lodge them." ECF No. 1 ¶¶ 192-247.

### IV. Defenses.

**Defendant City of New York and Defendant Officers Summary of Defenses:**

I am a Senior Counsel in the Special Federal Litigation Division of the New York City Law Department, representing defendants City of New York, Sergeant Barrett, Sergeant Klenke, Officer Ali, Officer Kaur, Officer Phillips, Officer Rebolledocortes, and Officer Ullah.

The City and defendant officers have not filed an answer. Defendants moved to extend their time to answer to December 18, 2023 (See ECF No. 16), and defendants' motion was granted. However, the following is the City's and defendant officers' summary of the case.

On 11/11/22 at approximately 10:33 a.m., defendant police officers Barrett, Ali, Kaur, Phillips, Rebolledocortes, and Ullah arrived at the area of 4th Avenue and St. Marks Place pursuant to a 911 call from defendant Klein that plaintiff had damaged his vehicle.

Upon arriving at the scene, defendant Klein told officers that plaintiff had broken a piece of plastic from his license plate frame, and showed officers the broken piece of plastic. Plaintiff showed officers photos he took of defendant Klein's vehicle that allegedly showed the piece of plastic was situated in defendant Klein's license plate frame in such a way that it improperly obstructed Klein's license plate number. Although plaintiff claims he did not break the piece of plastic, plaintiff admitted that he had removed the piece of plastic from defendant Klein's license plate frame. The BWC footage of defendant Officer Kaur shows the piece of plastic appears broken in that the top of it appears jagged.

Plaintiff was then arrested for criminal mischief, and transported to the 78 Precinct. He was eventually released with a desk appearance ticket for criminal mischief. Plaintiff alleges approximately 3-5 hours passed from the time he was arrested to the time he was released.

In the instant case, probable cause existed to arrest plaintiff based on defendant Klein informing officers that plaintiff broke his license plate frame, and plaintiff's own admission that he removed the piece of plastic from defendant Klein's vehicle without

permission or authority.  Due to the fact that the officers had, at a minimum, arguable probable cause to arrest plaintiff, the officers are entitled to qualified immunity

Since the officers had probable cause to arrest plaintiff, plaintiff's state law claims of false arrest, assault, battery, and malicious prosecution also fails.  The officers' BWC footage show that plaintiff was not placed in imminent apprehension of harmful contact, or that more force than was necessary was used to effectuate the arrest.  Also, plaintiff testified at his 50-h hearing that he was contacted before the return date of his desk appearance ticket, told he did not have to appear for the ticket, and never appeared in court.  Therefore, plaintiff's malicious prosecution claim fails since plaintiff was not arraigned.

In addition, plaintiff's allegations including First Amendment retaliation, deprivation of fair trial rights, discrimination, and conspiracy stemming from the arrest are baseless.  These allegations ignore the fact that plaintiff admitted that he removed a portion of defendant Klein's license plate frame without defendant Klein's permission.  Thus, plaintiff's claims that defendants committed such constitutional violations is disingenuous in light of the fact that plaintiff himself admits he improperly removed a portion of defendant Klein's license plate frame without permission.

Moreover, with respect to plaintiff's claim for municipal liability, plaintiff cannot sustain such a claim against the City because there is no underlying constitutional violation.

**Defendant Klein's Summary of Defenses:** Plaintiff's complaint readily admits in paragraph 5 of its complaint that the Plaintiff engaged in unlawful conduct by removing and touching Defendant Klein's vehicle in an unauthorized and unconsented to manner.  The Plaintiff removed plastic from the Defendant's license plate causing it to break.  As a result of Plaintiff's conduct, the Defendant called the police to report the Plaintiff's unlawful conduct.

The Plaintiff's §§ 1985 and 1986 claims are unfounded and the complaint on its face fails to set out any relevant facts to support it.  Specifically, because of the Plaintiff's own conduct and admissions, Defendant Klein reported the incident to the police whereupon the Plaintiff was arrested. There was no conspiracy that Defendant Klein was a part of, to deny or violate any of Plaintiff's rights.  But for Plaintiff's own conduct as plead in his complaint, Defendant Klein would not have reported him to Law enforcement.  Based on the aforementioned, it appears the police had probable cause to make an arrest. It is the Plaintiff's own culpable conduct that resulted in his arrest and nothing more.

At the outset, discovery has not yet been exchanged.  Defendant Klein's affirmative defenses are furthermore warranted.  The Plaintiff by definition of the New York Criminal Procedure Law engaged in vandalism, disorderly conduct, assault, menacing conduct against eh Defendant Klein.  Under the plausibility standard, the

Plaintiff's pleadings combined with Defendant's affirmative defenses have laid out a sufficient legal basis for the affirmative defenses. Moreover, the Defendant Klein reserves his right to amend his verified answer, affirmative defenses and cross-claims to plead with more specificity, if necessary.

### V.     Motions.

**Plaintiff's anticipated motions.** Plaintiff is considering a motion under Rule 12(f) (*see GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019)) to strike a number of Defendant Klein's purely conclusory and/or apparently frivolous defenses, since they seem to also implicate facts. Among others, his defenses that — with no further explanation — "Defendant Klein was harassed by the Plaintiff"; "Defendant Klein suffered vandalism by Plaintiff's conduct"; "Plaintiff engaged in disorderly conduct as and for against the Defendant Klein"; "Defendant Klein was assaulted by the Plaintiff"; and "Plaintiff engaged in men[]acing conduct as and for against the Defendant Klein" (ECF No. 15 at 37-38) are neither affirmative nor defenses. More to the point, they plead no factual "indication of what conduct by [Plaintiff] might have been a defense to" any claim. *GEOMC*, 918 F.3d at 99. And critically, Defendant Klein has failed utterly to "support these defenses with" any "factual allegations to make them plausible." *Id.* Plaintiff raised these deficiencies with Defendant Klein's counsel during the parties' 26(f) conference.

Additionally, Plaintiff has provided defense counsel with a copy of a draft protective order — both to address the typical concerns the City will raise, as well as to address the potential for retaliation against Plaintiff — and sent a draft to the Law Department on October 13, 2023 (after an attempted 26(f) conference before counsel for Defendant Klein had appeared), as well as to the Law Department and Defendant Klein's counsel on October 31, 2023, in advance of the 26(f) conference with all parties on November 3, 2023. A copy of Plaintiff's proposed protective order is attached as Exhibit 1. Plaintiff's counsel also raised the issue of needing a protective order during the 26(f) conference, and stated we would not consent to Defendant City's "form" protective order, which – among other things - provides for the blanket designation of law enforcement disciplinary records that are presumptively available to the public under New York law as confidential. At the conference, defense counsel did *not* say they would "submit their version of the protective order with the joint letter to the Court" as defense counsel claims below. Defense counsel included that claim for the first time in a 6:15pm draft of this joint letter. It did not happen. Between November 3, 2023 and 3:48pm today, defense counsel said nothing about the protective order issue. At 3:48pm today, counsel for Defendant City e-mailed to ask if Plaintiff's counsel would "agree to submit one protective order by a date certain." At 4:33pm, counsel for Defendant City provided the proposed protective order attached as Exhibit 2. Although, given the hour and the fact that is the eve of a holiday, Plaintiff's counsel has not had enough time to review the proposed order, it appears to be the City's "form" protective order. To cut to the chase, this is exactly the same position the parties in *Sherwood* were in before the Court entered into the protective order in that case, which, as the Court is aware, led to significant

6

litigation. Here, as there, it is clear to Plaintiff's counsel that the Court will need to decide which version of the parties' competing orders to endorse.

Finally, Plaintiff has raised the need to confer about ESI searches — particularly for emails and texts — with both sets of Defendants in October. Counsel for Defendant Klein assured Plaintiff's counsel that Defendant Klein was on notice to preserve potentially relevant ESI, including, but not limited to, texts, e-mails, social media ESI. Counsel for the City Defendants has advised us that he told the individual NYPD members who are names as Defendants to preserve whatever ESI they had in October. However, when Plaintiff's counsel made a specific proposals about how to proceed with discussing ESI discovery (including basic ESI tasks like exchanging information about which information systems might be involved in potential searches and search terms), counsel for the City Defendants took the position, in substance, that this was not the kind of case where the discussions we had initiated were necessary. Based on the City Defendants' position, a motion from Plaintiff may be necessary in order to ensure that the City Defendants have preserved and are prepared to conduct appropriate searches for potentially relevant ESI.

**Defendant anticipated motions.**

**Defendant City of New York and Defendant Officers' anticipated motion:** For the reason set forth in Section IV, defendants intend to move to dismiss this matter under F.R.C.P. Rule 12, and will be filing a pre-motion conference letter under separate cover.

With respect to a protective order, when plaintiff made it clear at the 26(f) conference that it would not consent to City's standard protective order, defendants advised that they would submit their version of the protective order with the joint letter to the Court. Contrary to plaintiff's contention, defendants recall that they did advise plaintiff of this. In any event, defendants have provided plaintiff and co-defendant Klein with a copy of the Protective Order that they hope the Court will endorse for this case, attached hereto as Exhibit 2.

With respect to plaintiff's potential motion to preserve ESI, defendants had previously advised plaintiff that exchanging information systems and search terms were not necessary at this point given the rather simple nature of this case. However, defendants have advised their ESI custodians to preserve whatever ESI they have.

**Defendant Klein's anticipated motion:** Defendant Klein most likely will file a motion pursuant to Rule 12 dismissing Plaintiff's causes of action. Any harm caused to Plaintiff was as a result of his own culpable conduct.

The parties thank the Court for the Court's attention to these matters.

Respectfully submitted,

/S/

Gideon Orion Oliver